IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

COMMUNITY BANKERS' BANK,      )
                                  )
           Plaintiff,       )
v.                             )    Case Number 3:12CV461
                                    )
RAVI PATEL,               )
and                          )
CHANDRA PATEL,         )
                                  )
          Defendants.     )

## COMPLAINT

Community Bankers' Bank ("CBB" or "Lender"), by counsel, for its Complaint against Ravi Patel and Chandra Patel, (collectively "Defendants" or the "Guarantors") states as follows:

## INTRODUCTION

1.     This is a Complaint to enforce personal guaranties of a loan made by CBB to Short Pump Hotel Partners, LLC ("Short Pump Hotel Partners") on or about October 24, 2008.

## PARTIES

2.     CBB is a bank organized pursuant to the laws of the Commonwealth of Virginia with its principal place of business in the County of Chesterfield, Virginia. For purposes of subject matter jurisdiction, CBB is therefore a resident of the Commonwealth of Virginia.

3.     On or about October 24, 2008, CBB made a business loan to Short Pump Hotel Partners in the principal amount of $19,250,000.00 in connection with the planned development of an Aloft Hotel located 3939 Duckling Drive, Glen Allen, in the County of Henrico, Virginia (the "Loan").

4.     In connection with the Loan, Short Pump Hotel Partners executed a series of loan documents, including but not limited to a Commitment Letter, Construction Loan Agreement, Note,

Deed of Trust and Security Agreement. A copy of the Commitment Letter, Construction Loan Agreement, Note, Deed of Trust and Security Agreement executed in connection with the Loan are attached hereto as Exhibits 1-5. These documents, together with all other documents executed in connection with the Loan are hereafter referred to as the "Loan Documents".

5.      Ravi Patel is a natural person, and on information and belief a citizen and resident of the State of North Carolina, who executed an Unconditional Guaranty, personally guaranteeing a portion of Short Pump Hotel Partners' obligations under the Loan. The Unconditional Guaranty executed by Ravi C. Patel (the "Ravi Patel Guaranty") is attached hereto as Exhibit 6 and incorporated herein by reference.

6.      Chandra Patel is a natural person, and on information and belief a citizen and resident of the State of North Carolina, who executed an Unconditional Guaranty, personally guaranteeing a portion of Short Pump Hotel Partners' obligations under the Loan. The Unconditional Guaranty executed by Chandra Patel (the "Chandra Patel Guaranty") is attached hereto as Exhibit 7 and incorporated herein by reference.

7.      Collectively Exhibits 6 and 7 are referred to herein as the Unconditional Guaranties.

8.      This Complaint is filed with an Affidavit of Debt. An original Affidavit of William R. Strader is attached hereto as Exhibit 8.

### JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction over this dispute as there is complete diversity of citizenship between CBB and the Defendants and the amount in controversy exceeds $75,000.

2

10.  Jurisdiction and venue are proper in this Court because both of the Guarantors consented to personal jurisdiction and venue in Virginia pursuant to Paragraph 8 of the Unconditional Guaranties.  (See Exhibits 6 and 7, Page 5, Paragraph 8).

11.  Jurisdiction and venue are proper in this Court because the Guarantors have guaranteed obligations that are due within this Commonwealth, they conduct business in Henrico County, Virginia, and because the events giving rise to this action occurred in Henrico County, Virginia and Chesterfield County, Virginia.

## COUNT I – BREACH OF CONTRACT

12.  CBB repleads and realleges Paragraphs 1 through 11 herein.

13.  In connection with and as part of the consideration for making the Loan, CBB obtained the Unconditional Guaranties from the Guarantors.

14.  The Loan matured and CBB demanded payment of the loan from Short Pump Hotel Partners through a Demand Letter delivered in accordance with the Loan Documents.  A copy of the Demand Letter is attached hereto as Exhibit 9.

15.  Short Pump Hotel Partners has failed to pay the Loan despite demand.

16.  Short Pump Hotel Partners has defaulted under the Loan, for *inter alia*, its failure to pay the Loan at maturity and upon demand.

17.  The Unconditional Guaranty executed by each Guarantor provides:

The Guarantor possesses a direct or indirect ownership interest in the Borrower and/or is an owner of the Borrower or otherwise has an interest in the Borrower, derives direct or indirect benefit from the extension of credit described above, and has offered to become a guarantor of the Indebtedness.

(*See* Exhs. 6 & 7 at p. 1.)

18.  Paragraph 1 of the Unconditional Guaranty executed by each Guarantor provides that:

3

The Guarantor, jointly and severely, absolutely and unconditionally, guarantees to the Bank the full and prompt payment and performance of all indebtedness, obligations and liabilities of Borrower to the Bank set forth in that certain Promissory note, of even date herewith, in the original principal amount of Nineteen Million Two Hundred Fifty Thousand and No/100 Dollars ($19,250,000.00), as the same may have been renewed, extended, modified, amended, restated, increased or substituted from time to time (collectively, the "Note"), and in any loan document evidencing, securing or otherwise executed by Borrower in connection with the Note, as such documents may have been modified, amended or restated from time to time (all of which indebtedness, liabilities and obligations are hereinafter collectively referred to as the "Indebtedness"). The Guarantor further jointly and severally, absolutely and unconditionally guaranties to the Bank the full prompt payment and performance of all representations, warranties, covenants and indemnities contained in any deed of trust securing the Indebtedness(whether granted by Borrower or a third party) relating to the environmental condition of the property conveyed thereby and the compliance with environmental laws. The Guarantor further agrees to pay all expenses incurred by the Bank in collecting such Indebtedness, or any part thereof, in preserving or disposing of any collateral securing the Indebtedness, and in enforcing this Guaranty, including reasonable attorney's fees, if after default the Indebtedness, or any part thereof, or this Guaranty, or both, are placed in the hands of an attorney for collection or if the Bank secures the services or advice of an attorney with regard to the enforcement of this Guaranty or the collection, preservation or disposition of any collateral given to secure the Indebtedness.

Notwithstanding the foregoing or any provision contained herein or in any other loan document evidencing, securing or otherwise executed by Borrower in connection with the Indebtedness (the "Loan Documents") to the contrary, the maximum liability of the Guarantor shall be limited to a sum equal to (a) one hundred twenty-five percent (125%) of the principal amount of the principal balance then outstanding as of the Liability Determination Date (as defined below), multiplied by that percentage of the Guarantor's ownership interest in the Borrower existing as of the date hereof, plus (b) all unpaid interest, (c) the obligations of the Borrower under the provisions of the Loan Documents relating to hazardous and toxic wastes, and (d) all costs and fees incurred in the collection of the debts, liabilities and obligations of the Borrower under the Loan Documents or the enforcement of liability of the Guarantor, including reasonable attorneys' fees. As used herein, the term Liability Determination Date" shall mean the earlier of (i) the date on which the Bank demands payment or performance by the Guarantor under this Guaranty, or (ii) the date on which the Bank commences a proceeding for foreclosure or any other exercise of rights or remedies under the Loan Documents, or (iii) the upon which any bankruptcy or similar proceeding shall be filed by or against the Borrower.

(*See id.* at 1-2.)

4

19.    At all relevant times, Ravi Patel: (i) has had an ownership interest in Short Pump Hotel Partners of 12.5%; (ii) owns directly, owns indirectly and/or controls a 12.5% interest in Short Pump Hotel Partners; and/or (iii) agreed, promised and maintained to CBB, either directly or through authorized agents, that he would guarantee the Loan and own, control, manage, make business decisions and/or participate in the affairs of the business as an owner of 12.5% of Short Pump Hotel Partners.  For reasons unrelated to the Loan, Ravi Patel may have designated that title to his ownership interest in Short Pump Hotel Partners be held in a way to facilitate the distribution of his interest among affiliates, friends or family members, while maintaining managerial and voting control of that ownership interest.  For purposes of the Ravi Patel Guaranty, Ravi Patel guaranteed to CBB payment of 125% of 12.5% of the principal amount of the Loan due to CBB as of the Liability Determination Date.

20.    As of the date of his Guaranty, Ravi Patel agreed to guarantee to CBB 15.625% (125% of 12.5%) of the "principal amount of the principal balance then outstanding as of the Liability Determination Date" plus "(b) all unpaid interest, (c) the obligations of the Borrower under the provisions of the Loan Documents relating to hazardous and toxic wastes, and (d) all costs and fees incurred in the collection of the debts, liabilities and obligations of the Borrower under the Loan Documents or the enforcement of liability of the Guarantor, including reasonable attorneys' fees." (*See* Ex. 6 at 2.)

21.    At all relevant times, Chandra Patel: (i) has had an ownership interest in Short Pump Hotel Partners of 12.5%; (ii) owns directly, owns indirectly and/or controls a 12.5% interest in Short Pump Hotel Partners; and/or (iii) agreed, promised and maintained to CBB, either directly or through authorized agents, that he would guarantee the Loan and own, control, manage, make business decisions and/or participate in the affairs of the business as an owner of 12.5% of Short

5

Pump Hotel Partners. For reasons unrelated to the Loan, Chandra Patel may have designated that title to his ownership interest in Short Pump Hotel Partners be held in a way to facilitate the distribution of his interest among affiliates, friends or family members, while maintaining managerial and voting control of that ownership interest. For purposes of the Chandra Patel Guaranty, Chandra Patel guaranteed to CBB payment of 125% of 12.5% of the principal amount of the Loan due to CBB as of the Liability Determination Date.

22. As of the date of his Guaranty, Chandra Patel agreed to guarantee to CBB 15.625% (125% of 12.5%) of the "principal amount of the principal balance then outstanding as of the Liability Determination Date" plus "(b) all unpaid interest, (c) the obligations of the Borrower under the provisions of the Loan Documents relating to hazardous and toxic wastes, and (d) all costs and fees incurred in the collection of the debts, liabilities and obligations of the Borrower under the Loan Documents or the enforcement of liability of the Guarantor, including reasonable attorneys' fees." (*See* Ex. 7 at 2.)

23. The Loan and the Unconditional Guaranties have been referred to Spotts Fain PC for enforcement and collection.

24. On April 6, 2012, CBB filed a Petition for Appointment of Receiver and for Injunctive and Other Relief in the Circuit Court for Henrico County, Virginia, seeking to exercise certain of its rights under the Loan. Therefore the Liability Determination Date as defined by the Unconditional Guarantees is April 6, 2012.

25. On May 16, 2012, CBB demanded payment in full from the Guarantors on the Loan through demand letters. True and accurate copies of the demand letters to the Guarantors are attached hereto as Exhibits 10 and 11. In the alternative, the Liability Determination Date, as

6

defined by the Unconditional Guarantees, is May 16, 2012. Despite demand for payment, the Guarantors have failed to make payment to CBB.

26. The principal amount of the balance outstanding under the Loan as of the Liability Determination Date (whether April 6, 2012 or May 16, 2012) was $19,250,000.00. The payoff (exclusive of attorneys' fees) of the Loan was not less than: (i) $19,943,641.68 as of April 6, 2012 or (ii) $20,071,975.01 as of May 16, 2012. The payoff (exclusive of attorneys' fees) as of June 22, 2012 is $20,005,610.01 which is composed of principal in the amount of $19,066,000.00, interest in the amount of $900,468.33 and late fees in the amount of $39,141.68. Interest accrues at the default rate of 10.00% on the principal amount. A copy of the payoff statement is attached hereto as Exhibit 12.

27. Each of the Guarantors executed an Unconditional Guaranty for the benefit of CBB, which Unconditional Guaranty was entered into for good and adequate consideration, and as an inducement to CBB to make the Loan.

28. Each Unconditional Guaranty is a valid and enforceable agreement against the respective Guarantors and guarantees the obligations of Short Pump Hotel Partners.

29. Each Unconditional Guaranty is a guaranty of payment and not a guaranty of collection and does not require that CBB first resort to an action against the Borrower or the Collateral for the Loan.

30. Short Pump Hotel Partners is in default under the terms of the Loan, the Loan has matured, and Short Pump Hotel Partners has failed to pay the Loan in full upon demand.

31. The Unconditional Guaranties provide for the payment of attorneys' fees and costs as more fully set forth therein.

32.     The Unconditional Guaranties contain the following provisions (the Environmental Indemnities):

> The Guarantor further jointly and severally, absolutely and unconditionally guaranties to the Bank the full and prompt payment and performance of all representations, warranties, covenants and indemnities contained in any deed of trust securing the Indebtedness (whether granted by Borrower or a third party) relating to the environmental condition of the property conveyed thereby and the compliance with environmental laws.

(*See* Exhs. 6 & 7 at p. 1.)

33.     CBB is aware of no existing claim or cause of action that it might bring against the Guarantors arising from the Environmental Indemnities.

34.     The relief requested herein is without prejudice to CBB's rights to later seek enforcement of the Environmental Indemnities if CBB becomes aware of a claim arising thereunder.

35.     CBB has been damaged as a result of Short Pump Hotel Partners default on the Loan, and CBB is therefore entitled to recover its damages from the Guarantors.

## COUNT II – REFORMATION and ESTOPPEL (Pled in the Alternative)

36.     CBB repleads and realleges Paragraphs 1 through 35 herein.

37.     Upon information and belief, Ravi Patel and Chandra Patel claim that pursuant to the Unconditional Guaranties, they did not individually guaranty their percentage of the Loan and thus the amounts set forth in Count I above.

38.     Several parties, including but not limited to H. K. Thakkar, acted as agents (the "Agents") for Short Pump Hotel Partners and the Guarantors in negotiating the terms of the Loan with CBB.

39.     The Agents were authorized to act on behalf Short Pump Hotel Partners and the Guarantors in negotiating the terms of the Loan with CBB.

40.     The Agents were acting within the scope of their authority in negotiating the terms of the Loan with CBB on behalf of Short Pump Hotel Partners and the Guarantors.

41.     During the negotiation of the terms of the Loan, H. K. Thakkar repeatedly represented to CBB in writing that regardless of the ownership interests in Short Pump Hotel Partners, Ravi Patel and Chandra Patel had agreed to each individually guaranty 1.25 times 12.5% (15.625%) of the principal due and owing on the Loan.

42.     Prior to execution of the Unconditional Guaranties, Howard Pisons, on behalf of CBB, had a telephone conversation, upon information and belief, with Ravi Patel, whereby Ravi Patel acknowledged for himself and for Chandra Patel that they had each agreed to individually guarantee 15.625% of the principal amount of the Loan.

43.     During the negotiation of the terms of the Loan, it was the intent of both Ravi Patel and CBB that Ravi Patel would sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

44.     During the negotiation of the terms of the Loan, it was the intent of both Chandra Patel and CBB that Chandra Patel would sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

45.     Part of the consideration for CBB making the Loan was the agreement of Ravi Patel to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

46.     Part of the consideration for CBB making the Loan was the agreement of Chandra Patel to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

47.     Ravi Patel, individually and through his agents, agreed to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

9

48.     Ravi Patel knew that he was agreeing to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan and knew that in making the Loan, CBB was relying on this agreement to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

49.     Chandra Patel, individually and through his agents, agreed to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

50.     Chandra Patel knew that he was agreeing to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan and knew that in making the Loan, CBB was relying on this agreement to sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

51.     The conduct of Ravi Patel and the conduct of Chandra Patel, individually and through their authorized agents, both during the underwriting of the Loan and after the Loan was closed demonstrates that each agreed to personally guarantee 15.625% of Loan.

52.     At no time did Ravi Patel or Ravi Patel's agent agree to guarantee an amount other than, or less than, 15.625% of the principal amount due on the Loan.

53.     At no time did Chandra Patel or Chandra Patel's agent agree to guarantee an amount other than, or less than, 15.625% of the principal amount due on the Loan.

54.     If the Ravi Patel Guaranty does not provide for the guaranty of 15.625% of the principal amount due on the Loan by Ravi Patel, this results from either a mutual mistake by the parties in memorializing the agreement or by the unilateral mistake of CBB that was induced by (actual or constructively) fraudulent conduct of Ravi Patel.

55.     If the Chandra Patel Guarantee does not provide for the guaranty of 15.625% of the principal amount due on the Loan by Chandra Patel, this results from either a mutual mistake by the

parties in memorializing the agreement or by the unilateral mistake of CBB that was induced by (actual or constructively) fraudulent conduct of Chandra Patel.

56. If the language of the Unconditional Guaranty signed by Ravi Patel does not provide for the guaranty of 15.625% of the principal amount due on the Loan by Ravi Patel then the Court should reform the Ravi Patel Guarantee to implement the terms of the agreement that were intended by CBB and Ravi Patel.

57. If the language of the Unconditional Guaranty signed by Chandra Patel does not provide for the guaranty of 15.625% of the principal amount due on the Loan by Chandra Patel then the Court should reform the Chandra Patel Guaranty to implement the terms of the agreement that were intended by CBB and Chandra Patel.

58. Based upon the statements by and on behalf of Ravi Patel, CBB believed that Ravi Patel would sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

59. CBB reasonably relied on the statements by and on behalf of Ravi Patel and as a result of that reliance made the Loan and disbursements on the Loan.

60. Ravi Patel should be estopped from asserting that he did not guarantee 15.625% of the principal amount due on the Loan; Ravi Patel's ability to make such a claim or assertion would result in a fraud upon CBB.

61. Based upon the statements by and on behalf of Chandra Patel, CBB believed that Chandra Patel would sign an Unconditional Guaranty guaranteeing 15.625% of the principal amount due on the Loan.

62. CBB reasonably relied on the statements by and on behalf of Chandra Patel and as a result of that reliance made the Loan and disbursements on the Loan.

11

63.     Chandra Patel should be estopped from asserting that he did not guarantee 15.625% of the principal amount due on the Loan; Chandra Patel's ability to make such a claim or assertion would result in a fraud upon CBB.

WHEREFORE, Community Bankers' Bank prays that the Court grant judgment in its favor and against the Guarantors and enter a Final Judgment and Order:

(1) For an award of damages against Ravi Patel in the following amounts: (a) principal amount of $3,007,812.50, plus (b) all accrued and accruing interest on the Loan, plus (c) all costs and attorneys' and other fees incurred by CBB in the collection of the debts, liabilities and obligations of the Borrower under the Loan, including costs and expenses of preserving and disposing of the collateral for the Loan, prospective fees and costs to be incurred in the future, plus (d) all costs and fees incurred by CBB in the enforcement of his liability as Guarantor, including reasonable attorneys' fees, including prospective fees and costs to be incurred in the future;

(2) For an award of damages against Chandra Patel in the following amounts: (a) principal amount of $3,007,812.50, plus (b) all accrued and accruing interest on the Loan, plus (c) all costs and attorneys' and other fees incurred by CBB in the collection of the debts, liabilities and obligations of the Borrower under the Loan, including costs and expenses of preserving and disposing of the collateral for the Loan, prospective fees and costs to be incurred in the future, plus (d) all costs and fees incurred by CBB in the enforcement of his liability as Guarantor, including reasonable attorneys' fees, including prospective fees and costs to be incurred in the future;

(3) To the extent necessary, reforming the Unconditional Guaranty of Ravi Patel to reflect the agreement of the parties and find that Ravi Patel agreed to guaranty 15.625% of the

principal amount due pursuant to the Loan and awarding damages against Ravi Patel in the following amounts: (a) principal amount of $3,007,812.50, plus (b) all accrued and accruing interest on the Loan, plus (c) all costs and attorneys' and other fees incurred by CBB in the collection of the debts, liabilities and obligations of the Borrower under the Loan, including costs and expenses of preserving and disposing of the collateral for the Loan, prospective fees and costs to be incurred in the future, plus (d) all costs and fees incurred by CBB in the enforcement of his liability as Guarantor, including reasonable attorneys' fees, including prospective fees and costs to be incurred in the future;

(4) To the extent necessary, reforming the Unconditional Guaranty of Chandra Patel to reflect the agreement of the parties and find that Chandra Patel agreed to guaranty 15.625% of the principal amount due pursuant to the Loan and awarding damages against Chandra Patel in the following amounts: (a) principal amount of $3,007,812.50, plus (b) all accrued and accruing interest on the Loan, plus (c) all costs and attorneys' and other fees incurred by CBB in the collection of the debts, liabilities and obligations of the Borrower under the Loan, including costs and expenses of preserving and disposing of the collateral for the Loan, prospective fees and costs to be incurred in the future, plus (d) all costs and fees incurred by CBB in the enforcement of his liability as Guarantor, including reasonable attorneys' fees, including prospective fees and costs to be incurred in the future;

(5) Providing that these proceedings are without prejudice to CBB's claims, rights and causes of action arising under or relating to the Environmental Indemnities; and

(6) For all other just and proper relief.

13

Respectfully submitted,

COMMUNITY BANKERS' BANK

By: _____
　　　　　　　　　　　Counsel

Robert H. Chappell, III (VSB #31698)
Timothy G. Moore (VSB #41730)
M. F. Connell Mullins, Jr. (VSB #47213)
Spotts Fain PC
411 E. Franklin St., Suite 600
Richmond, VA 23219
Post Office Box 1555
Richmond, VA 23218
(804) 697-2000 – Telephone
(804) 697-2100 – Facsimile
*Counsel for Community Bankers' Bank*

14